■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MEDNAN REDZEPOSKI, Defendant-Appellant. [801 NYS2d 267]—

Judgment, Supreme Court, Bronx County (Caesar Cirigliano, J.), rendered February 24, 2004, convicting defendant, after a jury trial, of grand larceny in the fourth degree and criminal possession of stolen property in the fifth degree, and sentencing him, as a second felony offender, to concurrent terms of 1½ to 3 years and 1 year, reversed, on the law, and the matter remanded for a new trial.

It is uncontested that defendant was not present for the verdict. Although the court had observed defendant in the hall of the courthouse prior to the verdict, defendant's counsel maintained that defendant suffered from diabetes and had taken ill. The court conducted no further inquiry as to the circumstances of defendant's absence. This was error.

CPL 310.40 (1) provides, in part, that, "[t]he verdict must be rendered and announced . . . in the presence of . . . the defendant . . . ." The law requires that the court make an inquiry and recite, "on the record the facts and reasons it relied upon in determining that defendant's absence was deliberate" before proceeding in the defendant's absence (*People v Brooks*, 75 NY2d

898, 899 [1990], *mot to amend remittitur granted* 76 NY2d 746 [1990]; *People v Morales*, 80 NY2d 450, 455 [1992]).

The dissent maintains that we are imposing a requirement of a "full-blown investigation to determine the truth of the [defendant's] explanation" for his absence which will bring trials to a halt. This distorts both the facts of this case and the holding of *Brooks*. The simple facts of this case are that the court rejected defendant's explanation that he felt ill and needed to go to the hospital merely because the court observed defendant in the courthouse hall prior to the verdict. The court's fleeting observations do not constitute a proper inquiry into defendant's absence from the proceedings. Similarly, it is clear from the colloquy relied on by the dissent that the court rejected defendant's explanation of illness simply because the court saw the defendant in the hall and that he "looked fine." This leads the dissent to conclude that the court "caught defendant in a material falsehood." Alchemy of this sort cannot serve as a substitute for a proper inquiry into defendant's absence. It is a rare case where the sum total of the evidence supporting proceeding in a defendant's absence consists of the court's momentary observations of the defendant. Thus, it is unlikely that the delay attendant to a *Brooks* inquiry will unduly delay the machinery of justice.

Absent a record of such inquiry, defendant's conviction must be reversed. Concur—Tom, J.P., Mazzarelli and Catterson, JJ.

Andrias and Friedman, JJ., dissent in a memorandum by Friedman, J., as follows: It is undisputed that defendant, without giving the court any prior notice or explanation, suddenly left the courthouse during his trial, just as it became known that the jury had reached a verdict.[1] The factual premise of the majority's reversal of defendant's conviction is that the trial court, before going forward with the announcement of the verdict in defendant's absence, failed to make a sufficient inquiry to determine whether defendant had absented himself voluntarily. As discussed below, the record flatly contradicts the majority's premise.

Defendant's trial commenced on Monday, January 12, 2004. At the end of the first day of the trial, the court gave defendant, who was free on bail, the warning about the consequences of

---

**1.** There is some ambiguity in the record as to whether defendant left the courthouse just before word came that a verdict had been reached, or immediately thereafter, while the court was attempting to gather all those concerned for the verdict's announcement. The court's last comment on the subject, however, indicates that defendant was still in the courthouse when it became known that the jury had reached a verdict.

failing to appear at trial required by *People v Parker* (57 NY2d 136 [1982]). On Friday, January 16, the court delivered its charge to the jury, and the jury retired to deliberate. When proceedings were reconvened that afternoon for the rendition of the verdict, defendant was not present. Defense counsel, given an opportunity to explain his client's absence before the verdict was announced, stated that, as "best as [he] [could] make out" from what he had been told by defendant's mother (who was not fluent in English), defendant might have left to obtain insulin treatment for his diabetic condition. However, counsel did not claim to have any personal knowledge of defendant's reason for leaving, or of where he had gone. Defense counsel candidly admitted that, based on what defendant's mother had said, he could not say whether defendant had gone to a hospital (counsel did not suggest any particular hospital) or to a methadone clinic. At that point, the trial justice noted that he had seen defendant "walking back and forth" in the hallway only 15 minutes earlier. The justice further noted that, although he and defendant had acknowledged each other when they passed in the hall, defendant had not given any indication that he was ill or needed to go to a hospital at that time. Based on these facts and circumstances, the trial court concluded—reasonably, in my view—that defendant had voluntarily absented himself from the proceedings. Only after giving the matter this consideration did the court proceed to take the jury's verdict.

The next day the trial part was in session—Tuesday, January 20 (Monday having been a holiday)—the Warrant Squad picked up defendant and brought him into court. When he appeared before the court that day, defendant stated that he "got real sick at 3:30" Friday afternoon, and had taken a taxicab to a hospital. The court responded: "I saw you in the hallway just about 3:30." The court continued:

"You were walking back and forth and you looked fine to me, nor did you say anything to me about being ill or having to go to a hospital. Immediately after that, the verdict came in. Basically, I think at that time. We had already been advised that a verdict had been rendered, and that we were trying to get all the parties together.

"So, my feelings are very strongly that you voluntarily abstained [*sic*] yourself from this Court."

While it is well established that a defendant's voluntary absence waives or forfeits his or her right to be present at the rendition of the verdict, the trial court is required to conduct an inquiry to determine whether the defendant's absence is voluntary before going forward in the defendant's absence (*see People*

*v Brooks*, 75 NY2d 898, 899 [1990], *mot to amend remittitur granted* 76 NY2d 746 [1990]; *People v Sanchez*, 65 NY2d 436, 443-444 [1985]). Contrary to the majority's view, however, the applicable case law does not require a trial court to conduct an inquiry into the reason for a defendant's absence more searching than the inquiry that was conducted here. The trial court in this case did precisely what the Court of Appeals held to be required in the decision on which the majority relies: "Before proceeding in defendant's absence, the court should [make] inquiry and recite[ ] on the record the facts and reasons . . . relied upon in determining that defendant's absence was deliberate" (*People v Brooks*, 75 NY2d at 899).[2] In *Brooks*, the court directed that the trial go forward in the defendant's absence when he failed to appear on time for the resumption of proceedings after an overnight adjournment (the defendant arrived in court 43 minutes later). The *Brooks* conviction was reversed because the trial court failed to place on the record any consideration at all of the reason for the defendant's absence. As the foregoing summary of the relevant facts makes clear, no such omission occurred at the instant defendant's trial. The trial court both inquired into the reason for defendant's absence, and stated the facts—its observations of defendant, and defendant's failure to advise the court, his lawyer or any court personnel of his purported need for medical treatment before he left the courthouse—leading it to conclude that his absence was voluntary.

*Brooks* provides no support for the majority's view that the trial court's inquiry in this case fell short of what the law requires. Nothing in *Brooks* can be construed to require a trial court, which has seen the defendant in the courthouse just minutes before, to do more than give defense counsel an opportunity to provide an explanation for the defendant's sudden absence. Nor does anything in *Brooks* forbid a trial court to reject a proffered explanation for a defendant's absence that is contrary to the court's own direct observations. In fact, we have previously held that a trial court is entitled to rely on its own

---

2. The only other case cited by the majority, *People v Morales* (80 NY2d 450 [1992]), decided the issue of whether a defendant has a right to be present at the preliminary examination of a child-witness to determine her testimonial capacity. In the present case, the issue is not whether defendant had a right to be present for the rendition of the verdict (unquestionably, he did [*see* CPL 310.40]), but whether the trial court had sufficient grounds to determine that defendant had forfeited or waived that right. Although *Morales* refers briefly, in dicta, to a defendant's right to be present for the rendition of the verdict (80 NY2d at 455-456), that reference casts no light on the question presented by this appeal.

observations in determining that a defendant has voluntarily absented himself from trial (*see People v McGrew*, 198 AD2d 6 [1993], *lv denied* 83 NY2d 807 [1994]). Thus, it is the majority that is "distort[ing]" the holding of *Brooks*, and ignoring its significant factual distinctions from this case.

Moreover, even if the trial court's initial inquiry into the reason for defendant's absence could be deemed insufficient, the conviction should be affirmed based on "subsequent events confirm[ing] the deliberate nature of defendant's absence" (*People v Mejia*, 268 AD2d 286 [2000], *lv denied* 95 NY2d 837 [2000], citing *People v Green*, 216 AD2d 581 [1995], *lv denied* 87 NY2d 902 [1995]; *see also People v Febo*, 210 AD2d 251, 252 [1994], *lv denied* 85 NY2d 972 [1995]). Here, after defendant was picked up on a bench warrant, he told the court that he had left the courthouse on Friday, January 16, because he had become "real sick" at 3:30 P.M. that day and believed that he needed to go to a hospital. The court was able to discredit defendant's statement based on its own direct observations of him at the very time he said he had become ill. The court recalled that, at 3:30 P.M. on January 16, it had seen defendant in the hallway "walking back and forth and you looked fine to me, nor did you say anything to me about being ill or having to go to a hospital." Essentially, the trial court caught defendant in a material falsehood, thereby removing any conceivably remaining doubt that his departure from the courthouse had been anything but voluntary.

The majority's reflexive application of *Brooks* has troubling implications. If the majority is correct, a defendant may bring his trial to a halt for a significant period of time, at will, by absconding after giving a friend or relative instructions to inform defense counsel that the defendant left because he needed to obtain immediate medical attention. The import of the majority's decision is that, when defense counsel offers such a story to explain the defendant's absence, the trial court has no choice but to stop the trial until a full-blown investigation to determine the truth of the proffered explanation has been completed. Although the majority denies that it is imposing a requirement of a "full-blown investigation" in situations such as the one presented here, the majority's writing says nothing to enlighten the bench and bar as to the extent of the inquiry the majority would require. Notwithstanding the majority's conclusory assertions that the trial court's actions fell short of a "proper inquiry," we are never told what additional steps a "proper inquiry" would have entailed. Nor does the majority offer any support for its supposition that an inquiry satisfying its

stringent but as-yet unarticulated standards is "unlikely" to "unduly delay the machinery of justice."

I see no reason to permit a defendant to disrupt his trial—to the great inconvenience of the court, the jurors and counsel alike—where, as here, the trial court can reasonably conclude that the explanation is false, based on its own observations and the defendant's failure to advise the court of the purported need for medical treatment before he left the courthouse. In this regard, it should be noted that the majority mischaracterizes the court's personal observations of defendant as the sole basis for the court's determination of the voluntary nature of his absence. In fact, it is clear that the court's determination was also supported by defendant's failure to give any prior notice or explanation for his departure, and by the vague, second-hand explanation provided by defense counsel, who admitted that he did not know whether his client had gone to some unspecified hospital or, alternatively, to a methadone clinic. I emphatically reject the majority's view that it is "[a]lchemy" to approve a judicial determination reached upon consideration of all these matters, after making due inquiry of defense counsel, who proved to have little concrete information to offer. In fact, counsel did not object to the court's decision to proceed, nor did he suggest that additional inquiry would yield further pertinent information. Accordingly, I would affirm defendant's conviction.